In the
United States Court of Appeals
For the Seventh Circuit

No. 98-4183

STEPHEN P. LENKER,

Plaintiff-Appellant,

v.

METHODIST HOSPITAL,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 95 C 377--Theresa L. Springmann, Magistrate Judge.

Argued September 23, 1999--Decided April 26, 2000

Before POSNER, Chief Judge, MANION and ROVNER,
Circuit Judges.

ROVNER, Circuit Judge.  Stephen Lenker sued his
employer, Methodist Hospital, under the Americans
With Disabilities Act, for failing to accommodate
him. Lenker, a nurse, suffered from multiple
sclerosis ("MS"). After his doctor issued a
lifting restriction for him, the hospital removed
him from his job as a nurse because the hospital
considered lifting to be an essential part of the
job that could not be reasonably accommodated. A
jury found in favor of the hospital and Lenker
appeals. We affirm.

I.

Lenker was diagnosed with MS while he was still
in nursing school, and Methodist Hospital knew he
had the condition when it hired him. At the time
of his hire, Lenker's MS was in remission, he had
no restrictions on lifting and he was able to
fully perform all of his nursing duties. One of
Methodist's job requirements for a staff nurse is
the ability "to manage, with assistance as
appropriate, approximately 200 lbs. weight." A
nurse's duties include turning patients in bed,
assisting patients to and from the bathroom,
helping patients walk and assisting patients who
unexpectedly fall. Sometimes other staff members
are available to assist a nurse with lifting, and
sometimes because of staffing shortages or

because an emergency arises, a nurse may have to engage in physically strenuous lifting without assistance.

None of this was a problem for Lenker until he had been on the job for approximately six months. At that time, he suffered an MS episode that resulted in a 10 day hospitalization. When he was released, his doctor indicated that Lenker should not engage in any lifting. Methodist's policy at the time was to require any employee who was sick on the job or who missed more than three days of work to obtain clearance from its Occupational Health Department before being allowed to return to work. Additionally, the policy stated that if the employee was released to work by the Occupational Health Department with restrictions, the employee's manager was to determine whether the employee could return to work with that restriction. As a result of the policy, a physician from the Occupational Health Department examined Lenker following his hospitalization. That doctor concurred with the judgment of Lenker's personal physician that Lenker should not engage in lifting. Thus, Lenker's work release contained a "no lifting" restriction. Lenker's manager subsequently determined that Lenker could not return to work as a nurse with that restriction because lifting was a necessary part of the job.

Although the hospital's policy required twelve months of service before an employee was eligible for a leave of absence, Methodist granted Lenker a leave to give him time to have his lifting restriction reevaluated and possibly removed. The hospital also gave Lenker access to its job posting board, which was not available to non-employees. Lenker's manager informed him of his layoff status and these benefits by telephone, and the two did not talk again about Lenker's employment status. During Lenker's layoff, his physical condition worsened, and after a year on layoff status, the hospital terminated Lenker's employment. Lenker sued Methodist, claiming violation of the Americans With Disabilities Act, and violation of state defamation law. The district court granted summary judgment on the state law defamation claim, and the ADA claim went to trial before a jury. The jury found in favor of Methodist Hospital. Lenker appeals.

II.

Lenker claims the district court erred when it refused to grant his Rule 50 motion for judgment as a matter of law, because Methodist failed to show at trial that it engaged in an interactive process to accommodate Lenker's disability. Lenker also protests the district court's refusal

to give three of his proposed jury instructions. The district court declined to give Lenker's proposed instruction regarding the interactive process in which an employer must engage to determine what accommodations might exist for the disabled employee, instead giving instructions proposed by Methodist Hospital on this same subject. The court also declined to instruct the jury that Methodist's "100% healed" policy violated the ADA, or that the jury could consider whether Methodist's stated reason for terminating Lenker was pretextual. We review the denial of a motion for judgment as a matter of law de novo, determining whether the evidence presented and the reasonable inferences drawn from the evidence are sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed. Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629-30 (7th Cir. 1996). We review the jury instructions to determine if, as a whole, they were sufficient to inform the jury correctly of the applicable law, reversing only if a particular instruction misguides the jury to a party's prejudice. Maltby v. Winston, 36 F.3d 548, 560 (7th Cir. 1994), cert. denied, 515 U.S. 1141 (1995).

A.

Lenker believes he is entitled to judgment as a matter of law because the hospital engaged in a directed rather than an interactive process with him once it learned of his disability. Lenker contends that Methodist failed to establish that lifting was an essential element of a nurse's job, and that he could not be accommodated. He protests Methodist's failure to assess the job of nurse and his abilities with an eye toward accommodating him. He maintains that uncontested evidence supports his view that the hospital refused to even consider an accommodation. Following a trial, we are limited in our review to assessing whether no rational jury could have found for Methodist. Emmel, 95 F.3d at 630.

In determining whether a particular job function is essential, we are guided by the federal regulations:

Evidence of whether a particular function is essential includes, but is not limited to:

(i)  The employer's judgment as to which functions are essential;

(ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)  The amount of time spent on the job

performing the function;

(iv)  The consequences of not requiring the incumbent to perform the function;

(v)  The terms of a collective bargaining agreement;

(vi)  The work experience of past incumbent in the job; and/or

(vii)  The current work experience of incumbents in similar jobs.

See 29 C.F.R. sec. 1630.2(n)(3). See also R. 67, Court's Instruction No. 16 (detailing these factors for the jury). The jury heard evidence that Methodist considered lifting an essential function of the job, that it was part of the job description for staff nurses, that at times, staff shortages or emergencies left a nurse without assistance in a lifting task, and that the need for lifting was not always predictable because patients sometimes fell or needed assistance unexpectedly. Lenker protests that lifting comprised at most two percent of a nurse's day, that devices were available to assist in lifting patients, and that all nurses were allowed to use their judgment to determine whether they needed assistance in a particular situation and call for other staff to help. The jury was free to find, however, that those times of the work day when lifting was required were essential to the nurse's job, that a device to assist in lifting a patient out of bed would not help a patient walk down the hall or to the bathroom, and that at times other staff would not be available to assist. In short, based on evidence presented by the hospital, the jury was certainly entitled to find that lifting was an essential function of a nurse's job.

The remaining question is whether Lenker could be accommodated, and whether the hospital engaged in an interactive process with him to determine appropriate accommodations. The hospital offered evidence that Lenker could not always be assisted in carrying out this function because of staff shortages and emergencies. Thus, not only was the lifting function essential, but Lenker could not be accommodated as a nurse. This did not relieve the hospital of its duty to accommodate Lenker in other ways if possible./1 Because Lenker could not be accommodated as a nurse, the hospital made its internal job postings available to him so that he could apply for other jobs in the hospital more suited to his abilities. See Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 694 (7th Cir. 1998) (reasonable accommodation includes reassignment to a vacant position for

which the employee is qualified); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 677-78 (7th Cir. 1998) (same). Lenker testified that he would have taken any job, but the hospital claimed Lenker refused to take any non-nursing jobs. For whatever reason, Lenker did not obtain another permanent position at the hospital. Whether the hospital tried to reasonably accommodate Lenker with these steps, and whether Lenker cooperated in the hospital's attempts to accommodate him are classic fact questions for the jury to resolve. The jury appears to have resolved the issues in the hospital's favor. We will not supplant our view of the evidence for that of a jury in its verdict. Emmel, 95 F.3d at 630 (quoting Hybert v. Hearst Corp., 900 F.2d 1050, 1054 (7th Cir. 1990)). We therefore affirm the district court's denial of Lenker's motion for judgment as a matter of law.

B.

  The district court rejected Lenker's proposed jury instruction regarding the interactive process. The controversial part of Lenker's instruction states that "if you find the interactive process was one directed by the defendant and not truly interactive, then this is a violation of the ADA on the part of the defendant." Lenker relied on Excel in support of this instruction. In Excel, the court found that an employer's procedure for accommodation was directive as opposed to interactive where, in part, the plant nurse unilaterally determined that employees could not be accommodated in certain positions. 154 F.3d at 699. Here, the court declined the instruction because other instructions already accurately and fully advised the jury as to what constitutes an interactive process:

With regard to this court's other instructions that fully advise the jury as to what constitutes an interactive review process, the court believes that the language contained in its instructions does properly reflect the language in the statute; that the statute specifically does not reference in this context a directive process as opposed to an interactive process as being a violation forbidden. For that reason, the court declined to use the plaintiff's tendered Instruction 17.

Tr. at 784. Although this explanation is somewhat cryptic, we believe the court was declining the instruction because the statute says nothing about a directed versus an interactive process, and other instructions adequately addressed the requirement for an interactive process.

Our review of the other instructions reveals that they did, in fact, adequately address the interactive process. The remaining instructions informed the jury of the employer's duty to analyze the job involved, determine its purpose and essential functions, as well as the duty to consult with the employee to determine the precise job-related limitations imposed by the disability and how those limitations could be overcome with a reasonable accommodation. The court also instructed the jury that the employer was obliged to identify, in consultation with the employee, potential accommodations, and to assess the effectiveness each would have in enabling the individual to perform the essential functions of the position. The jury was also instructed that the employer was to consider the preference of the individual to be accommodated and then select the accommodation most appropriate for both the employee and the employer. Based on this Court's decisions, the court also advised the jury that making these determinations is a cooperative process, and both the employer and the employee must make reasonable, good faith efforts: Neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.

R. 67, Court's Instruction No. 22. See Feliberty v. Kemper Corp., 98 F.3d 274, 280 (7th Cir. 1996); Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135-36 (7th Cir. 1996). These instructions are accurate statements of the law, and the jury was not therefore misled by them. Lenker's complaint that the concept of "good faith" was not adequately addressed is belied by the language we just quoted. As for Lenker's insistence on the "directed process" language, we have repeatedly held that a party is not entitled to any particular wording, and the court adequately addressed the interactive process concept with its instructions on the need for a cooperative process. See e.g. Russell v. National R.R. Passenger Corp., 189 F.3d 590, 594 (7th Cir. 1999). We therefore affirm the district court's refusal to give Lenker's alternate instruction.

C.

The district court also declined to give Lenker's "100% healed" instruction, which reads, in relevant part:

Additionally, if you find that the Plaintiff has proven by a preponderance of the evidence that

the Defendant Hospital has a policy that required the Plaintiff to be "100% healed" or that he must be "cured" of his disability before he could return to work as a nurse, then you shall find that this is a per se violation of the ADA and should find for the Plaintiff and against the Defendant.

R. 66, Plaintiff's Proposed Jury Instruction No. 37. The district court rejected the instruction because it was unnecessary in light of other instructions given and because it did not accurately reflect the law as it related to the issues presented in this case. Lenker relies on Excel in support of this instruction. Excel cited favorably a district of Minnesota case for the proposition that a policy that requires an employee to be 100% healed before returning to work is a per se violation of the ADA because it does not allow a case-by-case assessment of an individual's ability to perform the essential functions of the job, with or without accommodation. See Heise v. Genuine Parts Co., 900 F. Supp. 1137, 1154 n.10 (D. Minn 1995).

Lenker claims there was testimony that Methodist Hospital had such a policy. He cites statements from hospital personnel that an employee with a lifting restriction would not be allowed to return to work until the restriction was removed because lifting was an essential function of the job that could not be accommodated. This is a far cry from saying that Lenker's MS must be 100% healed before being allowed to return to work. The district court was correct that the "100% healed" instruction was not an accurate reflection of the law as applied to the facts of this case. Instead, Lenker's real objection to the hospital's policy was that it decided, without consulting Lenker, that lifting was an essential job function that could not be reasonably accommodated. Other instructions addressed this issue, and it was for the jury to decide whether Methodist was justified in its blanket assessment that nurses who could not lift could not be accommodated as nurses. It was also for the jury to decide whether the hospital adequately accommodated Lenker in other ways, such as giving him access to internal job postings, and placing him on layoff status to give him time to recover his ability to lift.

D.

The district court also rejected Lenker's proposed instruction on the issue of pretext. Lenker's instruction tracked the language of the McDonnell Douglas case, using a burden shifting analysis. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The instruction explained

that Lenker believed the actions taken against him were the result of unlawful discrimination in violation of the ADA, but that the hospital had advanced non-discriminatory reasons for its actions. Lenker's instruction explained that if this non-discriminatory explanation was not the true reason for the hospital's actions, then the explanation was pretextual. If the jury decided the explanation was pretextual, they were free to conclude that the real reason for the hospital's action was unlawful discrimination. The district court rejected this instruction because it found that a McDonnell Douglas burden-shifting analysis was inappropriate and unnecessary for an ADA case under our decision in Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281 (7th Cir. 1996).

In Bultemeyer, we explained that in a disparate treatment claim under the ADA, the plaintiff could use either direct proof or rely on the burden-shifting method defined in McDonnell Douglas. 100 F.3d at 1283. However, when a plaintiff brings a claim under the reasonable accommodation part of the ADA, the burden-shifting method of proof is both unnecessary and inappropriate. We held in Bultemeyer that if the plaintiff demonstrated that the employer should have reasonably accommodated the plaintiff's disability and did not, the employer has discriminated under the ADA and is liable. Id. See also Weigel v. Target Stores, 122 F.3d 461, 464 (7th Cir. 1997). There is no need at that point for indirect proof or burden shifting. Because Lenker's claim was based on reasonable accommodation and not disparate treatment, the district court was correct to reject Lenker's proposed pretext instruction.

AFFIRMED.


/1 The hospital also tried to accommodate Lenker by allowing him to go on layoff status so that he would have time to possibly regain his ability to lift if his MS went into remission.