Karen ROSS, Plaintiff,

v.

ALEGENT HEALTH a/k/a Alegent Health Mercy Hospital and/or Alegent Health—Mercy Hospital, Corning, Iowa and Alegent Health Clinic a/k/a Alegent Health Rosary Medical Clinic and/or Alegent Health—Bergan Mercy Health System and/or Alegent Health—Bergan Mercy Health Clinics, Defendants.

No. 4:03–CV–90511.

United States District Court, S.D. Iowa, Central Division.

July 13, 2005.

Trent J Martinet, Tiernan Timothy Siems, Erickson & Sederstrom PC, Omaha, NE, for Alegent Health and/or Alegent Health–Mercy Hospital, Corning, Iowa, Alegent Health Clinic and/or Alegent Health–Bergan Mercy Health Systems and/or Alegent Health–Bergan Mercy Health Clinics, Defendants.

Bruce H Stoltze, Brick Gentry Bowers, Swartz Stoltze, Schuling & Levis PC, Des Moines, IA, for Karen Ross, Plaintiff.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court is Defendants' Motion for Summary Judgment (Clerk's No. 51). Plaintiff's Complaint (Clerk's No. 1), filed September 15, 2003, alleges claims under the Americans with Disabilities Act ("ADA") and the Iowa Civil Rights Act of

1965 ("ICRA"). *See* 42 U.S.C. § 12101 et seq.; Iowa Code § 216.1 et seq. Subject matter jurisdiction over the ADA claims is proper pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's Iowa claims is proper pursuant to 28 U.S.C. § 1367. Venue is proper in the Southern District of Iowa under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this district. Defendants argue that Plaintiff's Complaint must be dismissed for failure to establish a prima facie case of disability discrimination. Plaintiff filed a Brief in Resistance (Clerk's No. 57) to Defendants' Motion, to which Defendants submitted a Reply Brief (Clerk's No.65). The matter is fully submitted.

## I. BACKGROUND

Plaintiff, Karen Ross ("Ross"), is a resident of Adams County, Iowa and a former employee of the Alegent Health Clinic located in Adams County, Iowa. Defendant Alegent Health Clinic is wholly owned and operated by Defendant Alegent Health, a non-profit medical corporation with its principal place of business in Nebraska. The two Defendants will be referred to collectively throughout the brief as "Alegent." Plaintiff was employed at Alegent, first as a Nurses Aide and then as a Licensed Practical Nurse ("LPN"). Ross' employment at Alegent lasted approximately twenty-one years, ending in July 2002.

On or about May 25, 2000, Plaintiff suffered a back injury during the course of her employment at Alegent. Ross was attempting to lower a patient to the floor with the assistance of a LPN student. Ross notified Alegent of her injury, pursued workers compensation, and was awarded medical benefits, temporary weekly benefits, and was given a light duty assignment at work. Prior to the back injury Plaintiff worked in a hospital setting, but following the accident, Plaintiff was moved to a clinic setting. In November 2000, Plaintiff was taken off work due to the injuries she sustained in the accident. She began work again in January 2001 pursuant to Alegent's Early Return to Work program.[1] Plaintiff worked once in March 2001, once in April 2001 and once in May 2001. Beginning in July 2001, Plaintiff worked three to four partial days per week answering the phones and filing.

Plaintiff's physician following the May 2000 accident was Dr. Alan Jensen. On August, 6, 2001, Dr. Jensen sent a letter to Alegent stating that Plaintiff had reached maximum medical improvement and described the Plaintiff's medical limitations.[2] Following receipt of Dr. Jensen's letter, Defendants informed Plaintiff that, because of the doctor's restrictions she was unable to fulfill the essential functions of the LPN position. Specifically, Phil Stegmaeier, of Alegent, wrote in letter dated August 8, 2001:

> Dr. Alan recommended permanent restrictions for you that were based on your Functional Capacity Evaluation, which indicates that you can work safely at the Light–Medium Physical Demand Level for an 8–hour day . . . . With these restrictions you are not able to meet the essential functions of the job of a L.P.N. and we need to pursue alternative job placement at Alegent health.[3]

---

1. Plaintiff suffered another on-the-job injury on January 2, 2001.

2. Dr. Jensen's restrictions included: a maximum lift of forty pounds; 8% whole person impairment; forty pound lift from the floor, thirty pound lift to the shoulder; twenty-five pound lift overhead; only occasional squatting, kneeling, stair climbing and crawling; only frequent bending, standing and walking.

3. Alegent's Functional Capacity Exam ("FCE") of Ross, done by Todd W. Suey M.S.P.T. on July 31, 2001, indicated that

Specifically, Alegent asserted that being able to lift over fifty pounds was an essential element of the LPN position, and as Ross was limited to lifting a maximum of forty pounds from the floor, she was disqualified. To support this statement, Alegent submitted the LPN Job Description, which lists under working conditions: "Normal hospital environment .... Must be able to lift 50 pounds unassisted ...." Defs.' Ex. 2 at 2.[4] She was told to work with Carol Shuler ("Shuler") in Human Resources to apply for other positions at Alegent that met her restrictions. Pursuant to Alegent's Early Return to Work Program, Ross had ninety days within which to find alternate employment at Alegent. Alegent also recommended that Ross contact the Iowa Division of Vocational Rehabilitation Services.

Although Plaintiff suggested and explored various alternative job placements at Alegent, ninety days after Alegent sent the letter, no alternative position was found. Plaintiff contends that she discussed and suggested several other positions to Shuler, both before and after the ninety day period, but that Shuler denied each suggestion. Among others, Plaintiff contends that she suggested the following alternate placements: 1) a secretarial position; 2) a position in the kitchen; 3) a Clinic Nurse position; and, 4) a phone nurse position. To each suggestion Shuler allegedly replied that the position was not available to Plaintiff due to either Plaintiff's lack of experience in that field or because of lifting requirements associated with the position. Additionally, Plaintiff contends that she spoke with Jill Evans and Deborah Goldsmith ("Goldsmith") about a phone nurse position/Clinic nurse position that became open. She was eventually told, however, that this position would not work out due to the lifting requirements. Also, Goldsmith allegedly said to Plaintiff: "We all know that if you get a back injury at Alegent Health, you're washed up." Defs.' Ex. 1 at 103). Plaintiff was not hired for the Clinic nurse position, but continued as a part-time LPN until July 2002. She left her part-time position at Alegent in July 2002, because she found full-time employment elsewhere.

Ross also provided two additional reports to the Court to establish her disability claim. First, is a medical evaluation done by Dr. Peter Wirtz, dated April 29, 2004. Dr. Wirtz's assessment stated that Plaintiff had a 7% impairment of the body as a whole. He also reported that, "[m]ajor life activities that would be limited would include length of standing, length of sitting, lifting. These limits would preclude long standing for preparing meals or the requirements of bending by doing laundry." Pl.'s Ex. 1 at 3. Second, is a Vocational Evaluation prepared by Carma Mitchell ("Mitchell"), a Vocational Rehabilitation Specialist. The Vocational Evaluation, dated May 21, 2004, reports that Ross, "lost access to at least 22% of the jobs she had access to overall prior to her work related injury." Pl.'s Ex. 2 at 4. A supplement to the Vocational Evaluation was completed on April 28, 2005 which affirmed the previous findings and referenced a document also not provided to the

---

Plaintiff could work at Light–Medium Physical Demand Level for an eight hour day.

**4.** In Plaintiff's deposition there are references made to the requirements necessary for a LPN in a clinic setting as opposed to a hospital setting. According to the questions posed by Defendants' attorney, the clinic LPN position description only provides that the position "may involve lifting and carrying of items up to 50 lbs." Additionally, that lifting over thirty-five pounds occurred only occasionally, as opposed to frequently in the hospital setting. Defs.' Ex. 1 at 78–82. However, the clinic LPN job description was not provided to the Court by either party.

Court. Pl.'s Ex. 6. The April 28, 2005 supplement states:

A hand written note at the bottom of the Alegent Health Position Description for LPN–Clinics indicates, "Karen will be working as a PRN LPN clinic phone nurse. Her weight lifting restriction will be accommodated for her work duties." Which is signed by Debra Goldsmith, Operations Director and dated 12–21–01.[5]

*Id.* at 2. Defendants argue that summary judgment should be granted because Plaintiff cannot establish a prima facie case of disability discrimination.

## II. SUMMARY JUDGMENT STANDARD

All Federal Rules of Civil Procedure are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. Summary judgment, however, is not merely a paper trial. "The district courts' role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In a motion for summary judgment, this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10A *Charles A. Wright, Arthur R. Miller & Mary Kay Kane* § 2712, at 574–78. The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921.

■ As employment actions are inherently fact based, the Eighth Circuit has repeatedly cautioned that summary judgment should "seldom be granted ... unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998) (citations omitted); *see also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991) ("summary judgment should seldom be used in employment discrimination cases"); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). This is because "inferences are often the basis of the claim ... and 'summary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999) (quoting *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 486–87 (8th Cir.1998)).

Nevertheless, the plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995)); Fed.R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th

---

**5.** Goldsmith is the Operations Director of Ancillary Services at Alegent's Corning, IA facility. She has submitted two affidavits in the present matter. One on April 8, 2005 and one on May 26, 2005.

Cir.1994); *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publ'g v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982).

## III. AMERICANS WITH DISABILITY ACT

█ "The ADA requires covered entities, including private employers, to provide 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a prima facie case under the ADA or the ICRA the Plaintiff must show that: 1) she is disabled within the meaning of the ADA; 2) she was qualified to perform the essential functions of her position with or without accommodation; and 3) she suffered an adverse employment action because of her disability. *Dropinski v. Douglas County, Nebraska*, 298 F.3d 704, 706 (8th Cir.2002).[6]

█ Once a prima facie case of discrimination is presented "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir.1998); *see also Snow*, 128 F.3d at 1205 (stating that the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is used to analyze claims brought under the ADA.) "If the employer meets this burden, the plaintiff then bears the burden of demonstrating that the employer's stated reason is pretextual for discrimination." *Wilking v. County of Ramsey*, 153 F.3d 869 (8th Cir.1998) (citing *Christopher*, 137 F.3d at 1072). At all times, the ultimate burden of proving discrimination lies with the plaintiff. *Snow*, 128 F.3d at 1206. Although the prima facie factors and burden shifting model are helpful tools towards identifying unlawful discrimination, the Court is mindful that, "[w]e should not confuse the means— *McDonnell Douglas'* three-step process— with the end, which is deciding whether or not an employer illegally discriminated." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir.1996); *see also McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817. ("[T]he prima facie case will necessarily vary in different factual situations."). Defendants argue that Plaintiff has failed to establish the first and second prongs of the prima facie case of discrimination.[7] Additionally, Defendants argue that since they followed their Early Return to Work policies they cannot be found to have discriminated against the Plaintiff.

### A. Qualified Person with a Disability

"To succeed under the ADA [Plaintiff] must first show that [s]he is 'disabled' within the meaning of the statute." *Knutson v. Ag Processing, Inc.*, 394 F.3d 1047 (8th Cir.2005). A person is considered "disabled" under the statute if the individual can show either: "'(A) a physical or mental impairment that substantially limits one or more of the major life activities

---

6. "Disability claims under the ICRA are analyzed in accordance with federal standards." *Brunko v. Mercy Hosp.*, 260 F.3d 939, 941 (8th Cir.2001) (citing *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir.1997)).

7. Defendants do not argue that Plaintiff has established the third prong of the prima facie case, in that removal from full time employment is an adverse employment action.

of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948–49 (8th Cir.1999) (quoting 42 U.S.C. § 12102(2))).

1. *A physical or mental impairment that substantially limits one or more of the major life activities of such individual.*

■■ Under clause (A) to show that one is "disabled," it is not enough that an individual suffers from an impairment. The impairment must "substantially limit one or more major life activities." 42 U.S.C. § 12102(2)(A). In order to be substantially limited in a major life activity the Court must consider: the nature and severity of the impairment; its duration or anticipated duration; and its long-term impact. *Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 685 (8th Cir.2003) (citing 29 C.F.R. § 1630.2(j)(2); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir.2001)).[8] The determination of whether an individual is "substantially limited" is a highly factual inquiry and the evidence to establish the existence of a disability is based, in large part, upon a plaintiff's own description of his or her impairment. "That the Act defines 'disability' 'with respect to an individual' 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner." *Toyota Motor*, 534 U.S. at 198, 122 S.Ct. 681 (external citations omitted). That being said, the Court must view the disputed facts in the light most favorable to Plaintiff and determine whether her impairment shows that she is "significantly

restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). Plaintiff contends that she is substantially limited in the major life activities of lifting, walking, performing manual tasks and working.

■ Lifting is a major life activity, but as Defendants point out, Plaintiff's 40–pound lifting restriction, by itself, does not constitute a disability under the ADA. *See Brunko*, 260 F.3d at 941; *Snow*, 128 F.3d at 1207 (holding that a 25–pound lifting restriction does not limit ability to perform major life activity). However, Plaintiff argues that her impairment is not limited to a general lifting restriction and the medical documentation describes additional impairments. Specifically, the Court is drawn to Plaintiff's contention that she can only walk one or two blocks before she feels pain and must sit down for 15–20 minutes. The Eighth Circuit has held that a back-injury that limits a plaintiff to walking a quarter-mile without stopping is "moderate, but not substantial for ADA purposes." *Wood*, 339 F.3d at 685. One or two blocks, however, is a substantially shorter distance than a quarter mile. Accordingly, the Court cannot say as a matter of law, Plaintiff is not substantially limited in the major life activity of walking. An average person can walk more than one or two blocks before they must sit down for twenty minutes. Assuming that Plaintiff's description of her walking impairment is true, such a restriction would substantially limit her daily life.

8. As the parties do not dispute that the EEOC regulations are applicable to this issue, the Court need not go into whether or not Congress gave the EEOC the authority to put forth such regulations such that they have the force and effect of law. *See Toyota Motor* *Mfg.*, 534 U.S. at 194, 122 S.Ct. 681. ("because both parties accept the EEOC regulations as reasonable, we assume without deciding that they are, and we have no occasion to decide what level of deference, if any, they are due.")

■ Additionally, viewing the evidence Plaintiff provided through the Vocational Expert in the light most favorable to Plaintiff, indicates that Plaintiff is substantially limited in the major life activity of working. To show that one is substantially limited in the major life activity of working, "a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor,* 534 U.S. at 200, 122 S.Ct. 681 (quoting *Sutton v. United Air Lines,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450.(1999)).[9] Describing what constitutes substantially limited in the major life activity of working, the CFR states:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). In the present case, evidence from the Vocational Expert indicates that Plaintiff "lost access to at least 22% of the jobs she had access to overall prior to her work related injury." Additionally, Plaintiff is certified as a LPN and the Vocational Report states that in the field of nursing "Ms. Ross has lost access to 84% of the jobs; she had access to prior to her work related injury." Viewing this alleged fact in the light most favorable to Plaintiff, Ross is excluded from 84% of the jobs that an average person with her training in nursing has access to. 84% is, indeed, a broad range of jobs. Defendants argue that she is not substantially limited in working as evidenced by her ability to find other employ-

ment. This is precisely the type of factual dispute that should be resolved by trial.

*2. Record of such impairment.*

■ Under clause (B) of § 12102(2), one is a qualified individual with a disability if one, "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

> "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records."

*Wheaton v. Ogden Newspapers, Inc.,* 66 F.Supp.2d 1053, 1064 (N.D.Iowa 1999) (quoting 29 C.F.R. pt. 1630. app., 1630.2(k)). The FCE preformed by Alegent in regards to Plaintiff's employment, indicates that she is limited to work in the Light–Medium Physical Demand Level for an 8–hour day. Such a restriction, argues Plaintiff, substantially limits her ability to work. Additionally, as evidenced by the letter from Alegent dated August 8, 2001, it relied on the FCE in deciding that Plaintiff was unable to perform the essential elements of a LPN position at Alegent. The Court finds that there are material facts in dispute regarding whether being restricted to any employment position that falls below the Medium Physical Demand Level substantially limits an individual who is trained as an LPN in the major life activity of working and whether it was this

---

9. The parties accept that working is a major life activity. Accordingly, the Court needs not

address that issue. *See Sutton,* 527 U.S. at 492, 119 S.Ct. 2139.

classification that Alegent relied on when it decided to remove Plaintiff from full-time employment.

### 3. *Being regarded as disabled.*

■ Finally, an individual is considered to be a qualified person with a disability under the ADA if he or she is "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). "The 'regarded as' portion of the ADA was 'intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities.'" *Knutson,* 394 F.3d at 1050 (quoting *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (internal quotation and citation omitted)). The test in regards to clause (C) is "... whether defendants treated plaintiff adversely because it regarded [her] as having an impairment that substantially limits one or more major life activities." *Weber v. Strippit,* 186 F.3d 907, 915 (8th Cir.1999). Plaintiff contends that Defendants regarded Plaintiff as being substantially limited in the major life activity of working. This is evidenced by the immediate removal of Plaintiff from her position after it received her maximum medical improvement letter. Further, there is little to no evidence submitted by Alegent regarding whether it seriously explored any alternative positions or reasonable accommodations. Such inaction by Defendants raises an inference of whether, the ninety day period provided by the Early Return to Work Policy was a mere waiting period before Plaintiff's inevitable termination due to her back injury.

■ The present factual situation is unlike the situation in *Brunko,* where the employer "encouraged Brunko to apply for and accept other positions at the hospital." 260 F.3d at 942. Actions taken by the employer in *Brunko* showed that it did not perceive the employee to be substantially limited in the major life activity of work-

ing. In contrast, while the letter from Alegent encouraged Plaintiff to apply for other positions, Plaintiff maintains that each time she suggested alternative employment, she was summarily denied by Alegent. In essence, Plaintiff's argument is that any attempt to find another position or a reasonable accommodation was futile. Such actions raise a question of whether Alegent ever intended to return Plaintiff to full-time employment, or whether it always intended to keep her at part-time employment, using her "disability" as an excuse. Such an inference is supported by the alleged statement made by Goldsmith that "You know you're washed up here when you have a back injury." If Alegent removed Plaintiff from full-time employment because it regarded anyone with a back injury as "washed up," Plaintiff is a qualified individual with a disability under § 12102(2)(C).

### B. *Qualified to Perform the Essential Functions of the Job*

■ The second prong of the prima facie case is whether Plaintiff was able to perform the essential functions of her job as an LPN, with or without reasonable accommodation. The crucial facts in this discussion are: 1) whether lifting fifty pounds is an essential function of the LPN Hospital or LPN Clinical position; and if so, 2) whether Plaintiff's inability to lift fifty pounds could be reasonably accommodated.

An essential function may be established by evidence that includes: "(1) the employer's judgment as to which functions are essential"; (2) "written job descriptions prepared before advertising or interviewing applicants for the job"; (3) "the amount of time spent on the job performing the function"; (4) "the consequences of not requiring the incumbent to perform the function"; and (5)

"the current work experience of incumbents in similar jobs." *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir.1998) (quoting 29 C.F.R. § 1630.2(n)(3)). "A determination of what functions are essential is fact-specific, and 'the inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential.'" *Barnes v. Northwest Iowa Health Ctr.*, 238 F.Supp.2d 1053, 1082 (N.D.Iowa 2002) (citing 29 CFR § 1630.2(n)(2) at app. § 1630.2(n)).

■ The job description for a LPN, submitted by Defendants, indicates that an individual "[m]ust be able to lift 50 pounds unassisted." During Plaintiff's deposition, however, Defendants' attorney makes reference to another job description for a LPN at Alegent, but one in a clinical rather than hospital setting. For a LPN in a Clinic setting the job description states the position, "may involve lifting and carrying of items up to 50 lbs."[10] Additionally Plaintiff testified that: "In all the time the Plaintiff worked for the Defendants she has never seen a Clinic employee lift 50 pounds." *See* Pl.'s Resistance Br. at 13 (citing Defs.' Ex. 1 at 79). Plaintiff, originally worked in the hospital setting, but after her injury she sought placement in a Clinic setting for which there was a job posting. Plaintiff, however, was told she would not qualify for the Clinic LPN position because of her back-injury. Whether or not lifting fifty pounds is an essential function of the LPN position, especially in the Clinic setting, is a material fact which is still in dispute.

■ Plaintiff also asserts that even if the fifty pound lifting requirement is an essential function of any LPN position at Alegent, her impairment could be reasonably accommodated because other nurses could offer assistance when any occasion to lift fifty pounds arose. Defendants argue that this is an unreasonable accommodation because Ross is asking that Alegent hire an additional employee to solely aid Plaintiff in lifting tasks. The determination of reasonableness turns on a variety of factors, many of which are relevant to the earlier question of whether a duty is essential. The affidavit of Goldsmith from Alegent states: "That Defendants would have been required to hire an additional LPN to work along side Plaintiff in order to accommodate Plaintiff's lifting restrictions since she worked at a small facility with limited staff." Aff. No. 2 of Deb Goldsmith at 2. If that is true, such an accommodation would be unreasonable. If however, Plaintiff's assertions are true that she never saw a Clinic employee lift over fifty pounds and there was always another employee available to assist in lifting, then such accommodation could be considered reasonable. *See Lenker v. Methodist Hospital*, 210 F.3d 792, 796 (7th Cir.2000) (holding that the jury was free to find that lifting was an essential function of the job when it heard conflicting evi-

**10.** Additionally there is a genuine dispute of material fact regarding whether or not there is also a Clinical phone nurse position, which could have accommodated Plaintiff's restrictions. The Second Affidavit of Goldsmith states: "That Defendants do not have a 'phone nurse' position where the individual merely answers telephones, files, and fills prescriptions." Aff. No. 2 of Deb Goldsmith at 1. However, there is also evidence that indicates, there was such a phone nurse position.

In the Second Report of Carma Mitchell, M.S. C.R.C., C.D.M.S. there is the following sentence: "A hand written note at the bottom of the Alegent Health Position Description for LPN–Clinics indicates, 'Karen will be working as a PRN LPN clinic phone nurse. Her weight lifting restriction will be accommodated for her work duties.' Which is signed by Debra Goldsmith, Operations Director and dated 12–21–01." Pl.'s Ex. 6 at 2.

dence from the parties as to the essentiality of the function). Due to the present disputes of material fact, the Court cannot say as a matter of law that either the fifty pound lifting requirement was essential to any LPN position, or that it would be unreasonable to have another employee assist Ross when she did need to lift fifty pounds or more.

### D. *Early Return to Work Program*

 Alegent also argues that, since it followed its Early Return to Work Program, it cannot be held liable under the ADA. To support this argument it cites an Eighth Circuit case, *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903 (8th Cir.1999). In *Stanback*, the employee returned from a work-related injury and subsequently missed several. days of work and was terminated under the absenteeism policy. The Eighth Circuit affirmed the district court dismissal of the ADA claims stating: "More importantly, Stanback did not offer any evidence suggesting that Best enforced its attendance policy in a discriminatory manner." *Stanback*, 180 F.3d at 909. The present facts are distinguishable because, in *Stanback*, the policy at issue was an attendance policy which applied to the entire work force. Here, the policy is an "Early Return to Work Policy" a policy designed only for those who, for at least a period of time, are not able to work.

 Further, the Court cannot say that as a matter of law granting a ninety day period in which an employee can seek other employment, by itself, satisfies the requirements of the ADA. If, as Plaintiff argues, Alegent did not do anything to provide reasonable accommodations, but actively discouraged Plaintiff while waiting for the ninety day period to expire, it is not in compliance with the ADA. It is important to repeat that the ADA *requires* covered employers to provide reasonable accommodations to the known physical limitations of its disabled employees. *See Toyota Motor*, 534 U.S. at 193, 122 S.Ct. 681. Viewing the evidence presented to the Court in the light most favorable to Plaintiff indicates that Alegent spent little to no time exploring whether Plaintiff could be accommodated. Alegent sent its decision that Plaintiff could not perform the essential functions of her LPN position only one day after it received the letter from Dr. Jensen indicating that Plaintiff reached maximum medical improvement. Simply because Alegent has an Early Return to Work Program in writing does not, as a matter of law, insulate it from liability under the ADA.

### IV. CONCLUSION

Plaintiff has presented sufficient evidence to generate genuine issues of material fact regarding whether she is a qualified individual with a disability. The submitted medical evaluations and her deposition testimony evidence more than a mere lifting impairment. The evidence presented describes additional impairments which, if true, show that Plaintiff is substantially limited in major life activities. As to the second prong of the prima facie case of discrimination, there remains genuine disputes regarding the essential functions of Alegent's LPN positions both in a hospital setting and in a clinical setting. Finally, remaining to be decided at trial is whether Plaintiff's impairment could reasonably be accommodated by assistance from other shift employees during lifting tasks. For the aforementioned reasons, Defendants' Motion for Summary Judgement (Clerk's No. 51) is DENIED.

IT IS SO ORDERED.