# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2941

_____

Randall Herbert Webner,

          Appellee,

v.

Titan Distribution, Inc,

          Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Northern District of Iowa.

[PUBLISHED]

_____

Submitted: April 13, 2001
Filed: October 9, 2001

_____

Before MCMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Randall Webner sued his employer, Titan Distribution, Inc. (Titan), alleging that Titan had discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1994 & Supp. IV 1998), and also asserted a state law claim that Titan retaliated against him by terminating his employment after he filed a workers' compensation claim. The jury agreed as to both claims, returning a verdict in Webner's favor and awarding him compensatory and punitive damages. After the district court entered judgment on the verdict, Titan moved for judgment as a matter of law or, alternatively, a new trial, which the district

court denied. We affirm the jury's liability finding on both the ADA claim and the supplemental state law retaliation claim, affirm the award of emotional distress damages, but reverse the jury's award of punitive damages.

## I.

The record, when viewed in the light most favorable to Webner, shows the following facts. Webner began his association with Titan in 1991 while he was employed by Titan's predecessor, Neiman's, in Ventura, Iowa. Neiman's was a family-owned business specializing in brake and actuator assemblies that were mounted onto trailers. Neiman's primary customer was Titan, which ultimately purchased the Ventura facility in 1996. Webner's first job at Neiman's was as a truck driver charged with delivering axles, tires, and brake parts. In 1994, Webner suffered a work-related herniated disk in his back while unloading tires from his truck. Webner had surgery and was off work recovering for six months. Three months after returning to work in 1995, he suffered another work-related back injury while driving a truck with a broken seat. Doctors diagnosed Webner with a new herniated disk in his back. Webner underwent a second back surgery in March 1996 where doctors inserted a metal plate into his back. The second surgery left Webner with severe pain in his left leg and numbness in his foot. In July 1996, doctors removed the plate from Webner's back in hopes of ameliorating his pain and numbness. After extensive rehabilitation, Webner was able to return to work full time at Titan in January 1997--a year and a half after his second injury. Because Webner's former truck driving position had been eliminated when Titan purchased the Neiman's facility, Titan assigned Webner to the assembly line. Webner's physician imposed several work restrictions upon his return, including a lifting restriction that allowed him to lift up to 50 pounds on occasion, up to 35 pounds more frequently, and 15 to 25 pounds continuously. Webner was also restricted from twisting and bending no more than 12 times per hour.

During his first month back to work, Webner was having to bend and twist frequently when retrieving parts used on the assembly line. As a result, he had back spasms and was in constant pain. Webner's physician ordered him to take an approximate two-week leave from work and seek physical therapy. Upon return to Titan, Webner was required to obtain a medical release from the company's orthopaedic surgeon, Dr. Lynn Nelson. Dr. Nelson further restricted Webner's lifting capacity to no more than 15 pounds regularly, 25 pounds occasionally, and a maximum of 50 pounds. Dr. Nelson also imposed a graduated work schedule beginning with a five-hour work day and increasing to an eight-hour day over a four-week period. Webner returned to work on March 10, 1997. Titan provided Webner with a stool and elevated his work station to decrease the strain on his back. Subsequent to these accommodations, Webner's back discomfort decreased and his daily productivity as measured by the number of pieces he assembled was at an acceptable rate.[1]

While Webner was recovering from his second surgery, he filed a workers' compensation claim. On February 24, 1997, in connection with the investigation of this claim, Webner's attorney requested permission to videotape Webner's work station at Titan. Titan refused this request, stating that videotaping its facilities was against company policy. Webner filed a motion on March 26, 1997, to compel Titan to allow the videotaping. On March 31, 1997, Webner's supervisor at Titan informed him that he was being terminated "due to [his] disability." (Appellee's App. at 61.) Webner was told that Titan had no positions to offer him that "fit [his] disability." (Id. at 62.)

---

[1]Titan provided employees with a standard number of parts it expected to be produced on both a daily and hourly basis. Titan told Webner that his productivity goal would be 75%. Generally, Titan expected that employees would produce at a rate of 85-90%.

Webner brought suit against Titan in October 1997, alleging Titan had violated the ADA and had retaliated against him for filing a workers' compensation claim in violation of Iowa law. Webner asserted that he was disabled within the meaning of the ADA because he was substantially limited in a major life activity, had a record of an impairment, and was regarded as impaired by Titan. On February 17, 2000, following a four-day trial, the jury awarded Webner $13,771 for lost wages and $25,000 for emotional distress damages. The jury also awarded Webner a total of $200,000 in punitive damages--$100,000 on each claim. The district court denied Titan's motion for judgment as a matter of law and for a new trial. Titan appeals the district court's order.

## II.

### A. ADA Claim

On appeal, Titan first challenges the finding that Webner was discriminated against, contending that Webner failed to establish a prima facie case under the ADA. We review the district court's denial of judgment as a matter of law de novo. Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir.), cert. denied, 528 U.S. 1050 (1999). We apply the same standard as the district court, viewing all the facts in Webner's favor and granting him all reasonable inferences. See Buckles v. First Data Res., Inc., 176 F.3d 1098, 1100 (8th Cir. 1999). "A jury verdict must be affirmed unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party." Cross v. Cleaver, 142 F.3d 1059, 1066 (8th Cir. 1998) (internal quotations omitted).

A party seeking relief under the ADA must establish by a preponderance of the evidence that he (1) is disabled within the meaning of the act; (2) is qualified to perform the essential functions of his job with or without a reasonable accommodation; and (3) was terminated because of his disability. Aucutt v. Six Flags

4

over Mid-Am., Inc., 85 F.3d 1311, 1318 (8th Cir. 1996). Titan contends that the court should have granted its motion for judgment as a matter of law because Webner's impairment is not a disability as defined by the ADA. The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999) (requiring actual, and not potential, limitation in order to establish a disability). Guidelines promulgated by the Equal Employment Opportunity Commission (EEOC) delineate several factors to assist in determining whether a disability comes within the protections accorded by the ADA, including the nature and severity of the impairment, the duration or expected duration of the impairment, and the long-term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Examining the evidence under the required standard, we hold that Webner presented evidence that could have allowed a rational jury to determine that his disability substantially limited one or more of his major life activities. A major life activity includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). We have previously recognized sitting, standing, lifting, and reaching to be considered major life activities. Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir.1997); see also Bragdon v. Abbott, 524 U.S. 624, 639 (1998) (emphasizing that the regulations provide an illustrative, rather than exhaustive, list of major life activities). To be substantially limited, a person must be unable to perform a major life activity that the average person in the general population can perform, or be significantly limited in the condition, manner, or duration under which the individual can perform that activity as compared to an average person in the general population. Weber v. Strippit, Inc., 186 F.3d 907, 913 (8th Cir. 1999) (citing 29 C.F.R. § 1630.2(j)(1)), cert. denied, 528 U.S. 1078 (2000). Webner testified at trial that his back injury limited his ability to walk, to stand for long periods of time, to twist, and

to bend at the waist without pain, which ultimately affected his ability to work. The jury also heard testimony from Dr. Nelson, stating that Webner had an impairment rating of 18% of the body as a whole after his three back surgeries, was only authorized to return to work incrementally subject to bending and lifting restrictions, and required physical therapy.

Furthermore, an individual is substantially limited in his ability to work under the ADA if the impairment "significantly restrict[s]" the individual's "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). At trial, a vocational expert testified on Webner's behalf that because of Webner's back injury, he was precluded from performing work that fell in the heavy and very heavy industrial classifications. These two classifications required the ability to lift in excess of Webner's lifting restriction of 50 pounds. While a lifting restriction standing alone is insufficient to demonstrate that Webner was substantially limited in the life activity of working, the inability to lift heavy objects can translate across a broad spectrum of physically demanding jobs. See, e.g., Cochrum v. Old Ben Coal Co., 102 F.3d 908, 911 (7th Cir. 1996) ("The physical restrictions [plaintiff's] physician placed upon him--no overhead work, heavy lifting, or pulling or pushing out from his body--might apply to a broad range of jobs, and are more than job specific."). Viewing all of the evidence which shows how Webner's back injury impacted him in his favor, we conclude that a reasonable jury could have determined that Webner's back injury had substantially limited his ability to work, to twist, to bend, and to stand, in addition to limiting his ability to lift. Because we hold that a reasonable jury could find Webner had a physical impairment that substantially limited one or more of his major life activities, we decline to address his alternative theories of disability that he advanced at trial.

Moreover, there is no merit to Titan's argument that the evidence was insufficient to allow a jury finding that Webner is a qualified individual who could

perform the essential functions of his job. A qualified individual must possess the requisite skill, experience, education and other job-related requirements for the position and must be able to perform the essential functions of the position with or without reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1111-12 (8th Cir. 1995). Webner was able to perform his assembly line job when Titan provided him with a stool and elevated his workstation. The use of a stool allowed Webner to remain seated while assembling cylinders along the line, which prevented him from having to bend or stand. Webner testified that he was able to perform his assembly duties and never expressed otherwise to Titan. Webner was told that he was doing what was expected of him by his supervisor, and Titan admits that Webner was meeting his production goals the week Titan terminated him. Titan counters by arguing that Webner may well have been proficient at light-assembly work, but he was unable to assemble heavier objects, which Titan cites as an essential requirement for one of its assembly workers. We conclude that a reasonable juror could conclude otherwise given the testimony of Webner's supervisor that performance of all the jobs on the assembly line was not required.

## B. State Law Retaliation Claim

Titan contends that the evidence was insufficient for the jury to find that Titan fired Webner for requesting to videotape his workstation in pursuit of a workers' compensation claim. A claim of retaliatory discharge under Iowa law requires a prima facie showing that (1) the employee engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action. Teachout v. Forest City Cmty. Sch. Dist., 584 N.W.2d 296, 299 (Iowa 1998). The Supreme Court of Iowa has recognized that when an employee is terminated in retaliation for asserting his right to workers' compensation benefits, a public policy is violated. Below v. Skarr, 569 N.W.2d 510, 511 (Iowa 1997); Springer v. Weeks & Leo Co., 429 N.W.2d 558, 559-60 (Iowa

7

1988). Webner was obligated to prove to the jury that his protected conduct of seeking workers' compensation benefits was a determining factor in Titan's decision to terminate his employment. See McMahon v. Mid-Am. Constr. Co., No. 99-1741, 2000 WL 1587952, at *3 (Iowa Ct. App. Oct. 25, 2000). "A factor is determinative if it is the reason that tips the scales decisively one way or the other, even if it is not the predominant reason behind the employer's decision." Teachout, 584 N.W.2d at 302.

It is possible that Webner requested to videotape his work station for reasons wholly unrelated to the injury incurred while driving a truck for Neiman's, which was the subject of the filed workers' compensation claim at issue. However, the timing of his termination in relation to his videotape request provides circumstantial evidence of a causal connection between the two events. Webner was fired four days after he filed his motion to compel Titan to allow him to videotape his workstation. We agree with Titan's assertion that timing of an adverse employment action standing alone is insufficient to support a retaliatory discharge claim, see id.; but there is more to this case than timing. Titan presented evidence that Webner's request to videotape his workstation had no bearing on the termination decision. Webner's supervisor, William Gibbons, conceded on cross-examination, however, that Webner's request to videotape "pushed the decision [to terminate Webner] over the edge." (Appellee's App. at 78.) When Gibbons informed his superior, Mark Borell, of Webner's intent to videotape his workstation, Borell uttered a profane remark. We refuse to second-guess the jury who, in light of its verdict, credited Webner's evidence over that of Titan's. Because a reasonable jury could have found that the request to videotape in connection with a workers' compensation investigation tipped the scales toward firing Webner, we uphold the jury's verdict on the retaliation charge.

We conclude that there is sufficient evidence from which a reasonable jury could conclude that Titan intentionally discriminated against Webner on the basis of his disability and terminated his employment in relation to his filing a workers'

compensation claim.  As Webner has met the required evidentiary threshold, we affirm the liability verdict.


## C.  Damages


Titan also argues that the jury rationally could not have awarded Webner $12,500 in emotional distress damages for each of his two claims because he established no serious emotional injuries stemming from his discharge. "Compensatory 'damages for emotional distress must be supported by competent evidence of "genuine injury."'"  Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196 (8th Cir. 2001) (quoting Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999)).  To prove emotional distress in relation to his ADA claim, Webner was not required to present medical or other expert evidence.  See Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997).  Instead, "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard."  Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 893 (8th Cir. 2000) (internal quotations omitted).  Webner was obligated to offer specific facts as to the nature of his claimed emotional distress and the causal connection to Titan's alleged violations.  See Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir. 1998).


Webner testified that he was emotionally devastated by losing his job--a termination Titan told him explicitly was because of his disability.  He testified that immediately after he was terminated he felt "empty," like he lost his best friend and that there was "a hole in his chest."  (Appellant's App. at 171, 176.)  He also testified that he was scared that he would be unable to pay his bills and was frustrated with his inability to find other regular work for six months.  Titan contends that Webner's self-serving testimony about his reaction after he was terminated is insufficient to sustain the jury's award of emotional distress damages.  We disagree.  As previously stated

a plaintiff's own testimony may provide ample evidence when heard in combination with the circumstances surrounding the plaintiff's termination. Furthermore, "[a]wards for pain and suffering are highly subjective and the assessment of damages is within the sound discretion of the jury, especially when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." Jenkins v. McLean Hotels, Inc., 859 F.2d 598, 600 (8th Cir. 1988) (internal citations and quotations omitted). We will not disturb the jury's award of emotional distress damages to Webner on his disability claim.

We also uphold the jury's award of emotional distress damage on his state law retaliation claim. The Supreme Court of Iowa has held that emotional distress damages are recoverable for a retaliatory discharge provided there is some evidence to support the claim, but the distress need not be severe. Niblo v. Parr Mfg., Inc., 445 N.W.2d 351, 356-57 (Iowa 1989). The court observed that "[h]umiliation, wounded pride, and the like may cause very acute mental anguish" and therefore is recoverable. Id. at 355 (internal quotations omitted). Webner presented evidence of his emotional difficulties to the jury which was charged with determining whether he suffered genuine emotional harm. We cannot say its determination was irrational.

Titan further contends that there was insufficient evidence to support the punitive damages award on either the ADA claim or the retaliation claim. We agree. "Federal law imposes a formidable burden on plaintiffs who seek punitive damages" in employment discrimination cases. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000). Punitive damages are warranted where the plaintiff shows that the defendant engaged in a discriminatory practice "with malice or with reckless indifference" to the plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1) (1994); see Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999); Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad, 527

U.S. at. 535. In <u>Kolstad</u>, the Supreme Court delineated specific situations in which, despite the employer's discrimination, the application of punitive damages is inappropriate: (1) the employer is unaware of the relevant federal prohibition; (2) the employer discriminates in the belief that the discrimination is lawful; (3) the underlying theory of discrimination may be novel or poorly recognized; or (4) the "employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense." <u>Id.</u> at 536-37.

Although we have found the evidence sufficient to support the jury's finding that Titan's actions were unlawfully discriminatory, there was no evidence of malice or insufficient evidence of reckless indifference on Titan's part. Titan's stated reasons for terminating Webner--that his back injury precluded him from performing all but light duty tasks, Titan was fearful that Webner would reinjure his back, and Titan did not have a job suited to his disability--while culpable, do not rise to the level of maliciousness required to sustain the jury's award of punitive damages. Instead, Titan's actions are consistent with an employer acting to protect itself against the possible sporadic absence of an employee.

Under Iowa law, punitive damages are appropriate when "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a) (2001). "Willful and wanton" in the context of this statute means that the defendant "'has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which is usually accompanied by a conscious indifference to the consequences.'" <u>Mercer v. Pittway Corp.</u>, 616 N.W.2d 602, 617 (Iowa 2000) (quoting W. Page Keeton et al., <u>Prosser & Keeton on the Law of Torts</u> § 34, at 213 (5th ed. 1984)). Punitive damages are proper only when actual or legal malice is shown. <u>Schultz v. Sec. Nat'l Bank</u>, 583 N.W.2d 886, 888 (Iowa 1998). Actual malice is established by such characteristics as personal spite,

11

hatred, or ill will.  Id.  "Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights."  McClure v. Walgreen Co., 613 N.W.2d 225, 231 (Iowa 2000).  Here, as with Webner's federal claim, the evidence does not reveal willful or reckless disregard for Webner's rights; nor does the record show any personal spite or ill will toward Webner.  Although Titan refused to allow Webner to videotape his workstation until the court compelled its compliance, Titan did so in furtherance of the company policy to protect its trade secrets.

In sum, we conclude that the evidence did not show that punitive damages were warranted and therefore we vacate the jury's award of such damages.

## D.  Attorneys' Fees

Titan argues that the district court erred when it awarded Webner attorneys' fees for the services of two attorneys providing what Titan describes as duplicative services.  We review a district court's award of attorneys' fees for an abuse of discretion.  Am. Fed'n of Musicians, Local 2-197 v. St. Louis Symphony Soc'y, 203 F.3d 1079, 1081 (8th Cir. 2000).  Webner had two attorneys present at his depositions:  one attorney specialized in workers' compensation matters while the second attorney specialized in employment discrimination.  Titan argues that having two attorneys present at the same depositions is unnecessary and duplicative.  The district court reasoned that it was not unreasonable for both attorneys to be present at the depositions and was actually more efficient because the ADA and retaliation issues were closely related.  Titan further contends that the district court should have reduced the attorneys' fees by 50% because Iowa law does not provide for an award of attorneys' fees in a wrongful termination case.  The district court agreed in part and reduced the amount of fees Webner sought but by only 10%.  The court concluded that the evidence Webner submitted was interrelated and overlapped between the two claims, therefore further reduction was not appropriate.  The district court provided

12

a well-reasoned analysis for its award of attorneys' fees. The Supreme Court has made clear that "the most critical factor" in determining the reasonableness of a fee award in a civil rights suit where the core of facts is the same "is the degree of success obtained." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989) (internal quotations omitted). Webner prevailed in this litigation. Consequently, we are persuaded by the district court's well-reasoned opinion and affirm its award of attorneys' fees.

## III.

For the reasons explained above, we reverse the district court's denial of Titan's motion for judgment as a matter of law as to the punitive damages awarded on both the ADA claim and the state law retaliation claim. In all other respects, we affirm the judgment of the district court. Accordingly, we remand to the district court for an entry of judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13