PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDRE TAYLOR,

*Plaintiff-Appellant,*

v.

FEDERAL EXPRESS CORPORATION,

*Defendant-Appellee.*

No. 04-2056

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(CA-03-195-RDB)

Argued: September 21, 2005

Decided: November 16, 2005

Before MOTZ, TRAXLER, and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Traxler and Judge Shedd joined.

---

## COUNSEL

Bruce Michael Bender, VAN GRACK, AXELSON, WILLIAM-OWSKY, BENDER & FISHMAN, P.C., Rockville, Maryland, for Appellant. Michael Edwin Gabel, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Andre Taylor claims that Federal Express Corporation violated the Americans with Disabilities Act (ADA) when it failed to accommodate his back impairment and terminated his employment. The district court granted summary judgment to Fed Ex, holding that Taylor is not disabled under the ADA.[1] We affirm.

I.

For twelve years, beginning in 1988, Taylor worked as a Fed Ex courier in Maryland. In 2000, he injured himself while working and began to suffer from back pain. Taylor received treatment, but nonetheless "had difficulty bending, standing for prolonged period[s] of time, and lifting more than 30 lbs." He was unable to return to his job as a courier because that position required lifting packages weighing up to 75 pounds. Taylor's treating physician determined that his "persistent pain" meant that Taylor "could not go back to work as a laborer", and a physical therapist recommended "returning to work at the LIGHT-MEDIUM (30 lbs.) level with restricted sitting and standing tolerances and restricted stair climbing and overhead reaching."

Fed Ex provided Taylor with a temporary light-duty job for 90 days, after which he was placed on short-term disability leave followed by long-term disability leave. In February 2001, Fed Ex determined that Taylor was not entitled to long-term disability benefits and gave him the option of returning to work as a courier or taking a 90-day leave of absence to look for other work. Fed Ex also notified Taylor of his right to appeal the disability benefits determination. Taylor appealed the decision and did not return to work as a courier. On March 6, 2001, Fed Ex sent Taylor a letter confirming that "you are

---

[1]Taylor also appeals the district court's decision that the statute of limitations bars his claims arising prior to May 25, 2001, arguing that he did not receive unequivocal notice of his discharge until September 25, 2001. Brief of Appellant at 47-49. Because we hold that Taylor is not disabled under the ADA, we need not reach this question.

requesting a 90 day Personal Leave of Absence to seek positions within Fed Ex for which you qualify and can perform."

In June 2001, Fed Ex extended Taylor's leave of absence pending an independent medical examination. The physician who conducted that examination cleared Taylor to return to work. On September 25, 2001, Fed Ex sent Taylor a letter offering him a part-time courier position and stating, "if you are unable to accept this position, your voluntary resignation will be processed for failure to return from Leave of Absence." Taylor unsuccessfully applied for a dispatcher position on September 27, 2001, and Fed Ex sent a letter discharging him on October 15, 2001.

After Fed Ex discharged Taylor, he unsuccessfully looked for other employment for six months. He also met with a vocational consultant who evaluated his employment prospects. The vocational consultant estimated that Taylor's work experience and educational background qualified him for 3,281 job titles out of the 12,741 job titles listed in the Department of Labor's Dictionary of Occupational Titles. According to the consultant, Taylor's injury excluded him from 1,871 job titles, or 57 percent of the job titles for which he would have been qualified absent his injury. These figures translate into disqualification from 370,000 jobs in the Baltimore-Washington metropolitan area. Despite his impairment, Taylor remained able to perform the work involved in 1,410 job titles, or over 130,000 jobs in the region.

On March 21, 2002, Taylor filed charges against Fed Ex with the Equal Employment Opportunity Commission (EEOC), claiming that Fed Ex discriminated against him on the basis of his disability. Six months later the EEOC sent Taylor a right-to-sue letter, explaining that the agency had been "unable to conclude that the information obtained establishes violations of the statutes." On November 15, 2002, Taylor brought suit against Fed Ex in the Circuit Court for Prince George's County, Maryland; Fed Ex removed the case to federal court.

In deposition testimony, Taylor conceded that he drives over one hour each way to college, sits in classes for two to three hours, performs yard work, camps with his family, plays catch with his chil-

dren, and cleans his house. After discovery, the district court granted summary judgment to Fed Ex.

## II.

In order to recover under the ADA, a plaintiff must demonstrate that he or she has a disability. 42 U.S.C.A. § 12112(a) (West 2000). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (West 2000). Taylor claims that his back impairment substantially limits his ability to work and therefore constitutes a disability under the ADA.

The district court assumed without deciding that working is a major life activity under the ADA. The Supreme Court has expressly declined to resolve this question. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). Because this case does not require us to decide the issue, we too will simply assume that working is a major life activity.

The district court began its analysis by recognizing that a disability determination must be an individualized inquiry. *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). The court then identified several cases in which we have held that a lifting restriction alone does not constitute a disability under the ADA. *See, e.g.*, *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 470 (4th Cir. 2002); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir. 1996).[2] The court also noted that Taylor's ability to perform a broad range of activities, including lengthy daily drives and a multitude of household tasks, "provides insight into his degree of impairment." "After a thorough review of all the parties' submissions," the court concluded that

---

[2]Our opinion in *Williams* should not be read to create a *per se* rule that a twenty-five pound lifting restriction can *never* constitute a disability. The Supreme Court has made clear that disability determinations require an individualized inquiry. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002); *Albertson's, Inc., v. Kirkingburg*, 527 U.S. 555, 556 (1999).

Taylor could not "establish that his alleged injuries constitute[d] a disability under the ADA."

On appeal, Taylor argues that the district court failed to give adequate consideration to the vocational report indicating that his impairment precluded him from 1,871 kinds of jobs and "locked him out of the job market." Brief of Appellant at 22.

Such vocational evidence is certainly relevant in determining whether an impairment affecting an individual's ability to work constitutes a disability under the ADA. As the Supreme Court has explained:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492; *see also Toyota*, 534 U.S. at 200 ("With respect to the major life activity of *working[,]* [t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." (quoting EEOC regulations) (emphases and alterations in original)).[3]

Similarly, we note that several of our sister circuits have held, in

---

[3]The Supreme Court has declined to indicate "what level of deference, if any," courts should give to the EEOC's interpretive guidelines. *Toyota*, 534 U.S. at 194. However, the Court has indicated that the EEOC guidelines "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141-42 (1970)) (citations and internal quotation marks omitted).

cases involving lifting restrictions like the one at issue here, that the requisite individualized inquiry involves consideration of the impairment's effect on the plaintiff's employment prospects. *See, e.g.*, *Webner v. Tital Distrib., Inc.*, 267 F.3d 828, 834 (8th Cir. 2001); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 254 (6th Cir. 2000); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 11-12 (1st Cir. 1999).

However, after review of the entire record, including the vocational report upon which Taylor so heavily relies, we cannot conclude that the district court erred in granting summary judgment to Fed Ex. Although the vocational evidence that Taylor presented suggests that his impairment precluded him from a number of jobs for which he would be qualified absent his injury, it does not suffice to create a jury question as to whether the impairment substantially limited the asserted major life activity, i.e. working. Rather, the record indisputably reveals that Taylor could perform a range of daily activities requiring endurance, flexibility, and some strength, and that even with the impairment he qualified for over 1,400 different types of jobs and over 130,000 actual jobs in the Baltimore-Washington region.

To hold that in the face of such evidence a factfinder could conclude that Taylor was substantially limited in the major life activity of working would be to ignore the Supreme Court's recent directive in *Toyota*. There the Court emphasized that the terms "substantially limits" and "major life activity" "need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota*, 534 U.S. at 197; *see also Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002) (holding that evidence that plaintiff's impairment caused a 47 percent loss of access to the job market was insufficient to establish a disability). Given that Taylor admittedly retains the ability to engage in a wide range of *daily* activity and to work in over 100,000 jobs in his geographic region, a reasonable juror could not find that his impairment substantially limits his ability to work, or for that reason renders him disabled for purposes of the ADA.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*