# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3004

_____

Maverick Transportation, LLC

*Petitioner*

v.

U.S. Department of Labor, Administrative Review Board

*Respondent*

Albert Brian Canter

*Intervenor*

_____

Petition for Review of an Order of the
Department of Labor (except OSHA)

_____

Submitted: June 13, 2013
Filed: January 16, 2014 (Corrected January 17, 2014)

_____

Before LOKEN, BRIGHT, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

An Administrative Law Judge found Maverick Transportation, LLC (Maverick), liable for taking retaliatory action against Albert Brian Canter in

violation of the Surface Transportation Assistance Act (STAA), 49 U.S.C. § 31105. The Department of Labor Administrative Review Board (ARB) affirmed. Maverick now petitions for review, which we deny.

I

In early October of 2003, Maverick hired Canter as a commercial vehicle driver. On November 21, 2003, while driving a tractor-trailer carrying a load for Maverick, Canter was involved in an accident in Pennsylvania which resulted in the death of a motorist. The Pennsylvania State Police placed the truck Canter had been driving out of service while they investigated the accident. During the post-accident inspection, a state trooper found the truck had defects in violation of a number of federal safety regulations. The defects included brakes out of adjustment, a fluid leak in the power steering box, a chaffing brake hose, and improperly secured dunnage.

The trooper told Canter the truck would be released, provided the brakes were adjusted immediately and Maverick assured him the other violations would be corrected. Canter informed Maverick about the defects and the conditions for the truck's release. Canter corrected the dunnage defect himself and Maverick arranged to have the truck's brakes adjusted the following day. Canter then called Maverick to inform it two defects remained uncorrected. Maverick's fleet manager, Robert Roberson, told Canter the local law enforcement officials had authorized Canter to drive the truck to Canter's home, provided the remaining defects were corrected there.

Canter drove the truck approximately eighty miles to a truck stop near his home. There, on Maverick's instructions, he dropped off the trailer containing the load he had been carrying. Maverick dispatched another driver to pick up Canter's load but did not arrange for the remaining defects in the truck to be corrected at the truck stop. Canter then drove the truck another nine miles to his home.

As a result of the accident, Canter experienced depression. Maverick required Canter to take a month-long medical leave. Maverick did not arrange to have the truck's defects corrected while Canter was on medical leave. On December 29, 2003, Canter was cleared to return to work. He chose to resign instead.

When Canter called to inform Maverick of his resignation, he spoke to Roberson. Roberson asked Canter to drive the truck an additional 200 to 250 miles to Maverick's yard to return it. Canter refused to do so unless Maverick first fixed the remaining defects and agreed to provide him with transportation home. Canter told Roberson the truck had "too many deadline problems," and the uncorrected defects with the truck were in violation of federal safety regulations. Canter then left the truck with the uncorrected defects at the truck stop where he had left its trailer a month earlier, which he had authority to do, and informed Maverick of its location.

After Canter resigned, Roberson prepared an internal memo to submit to Maverick's Rehiring Committee, in which Roberson indicated Canter had refused to drive the truck because it had "too many deadline problems." Roberson also talked with Maverick officials about placing an abandonment notation in Canter's Drive-A-Check[1] (DAC) report. An abandonment notation has a negative effect on a driver's ability to be hired and some employers refuse to hire drivers who have an abandonment notation in their DAC report. The Rehiring Committee ultimately placed an abandonment notation in Canter's DAC report because Canter had refused to drive the truck to Maverick's yard.

Canter secured employment one month after resigning from Maverick and worked for five different trucking companies between 2004 and 2008. After April

---

[1]A Drive-A-Check report is a consumer report describing a truck driver's employment history. Potential employers can access the report when making hiring decisions.

2008, Canter began experiencing difficulty finding work. Sometime on or after June 1, 2008, a recruiter told Canter information in his DAC report had prevented Canter from being hired. Canter requested the report and received it thirty days later, sometime in July or August of 2008. This was the first time Canter had seen his DAC report or the abandonment notation.

Canter's final trucking job was with DSCO, Inc. (DSCO). He began working for DSCO in July 2008 and resigned in September 2008 when DSCO requested he violate federal hour-of-service regulations. Canter subsequently sought employment with K&B Transportation (K&B). Canter met all of K&B's hiring requirements, but K&B refused to hire him because of the abandonment notation in his DAC report. Canter's inability to find work negatively affected his mental state. He lost his home, became depressed, suffered a loss of appetite, and experienced suicidal thoughts. Canter eventually found work as a produce clerk.

On December 16, 2008, Canter filed a STAA complaint against Maverick with the Occupational Safety and Health Administration (OSHA) alleging retaliation. OSHA's investigation concluded the complaint lacked merit, and Canter sought review by an Administrative Law Judge (ALJ).

Before the ALJ, Maverick argued Canter had not timely filed his STAA claim, which it also argued failed on the merits. In its recommended decision, the ALJ concluded the claim was timely. Relying on ARB precedent interpreting the STAA limitations period to begin to run when the employee receives definitive notice of an adverse action, the ALJ found Canter had filed his claim within 180 days of receiving definitive notice of the abandonment notation. The ALJ also concluded Maverick had unlawfully retaliated against Canter. The ALJ reasoned Canter's refusal to drive the truck was protected by the STAA because the truck still had defects which violated federal regulations, and of which Maverick was aware. The ALJ reasoned in the alternative Canter had a reasonable fear of danger because of the truck's unsafe

-4-

condition. The ALJ further found the refusal had motivated Maverick to place the abandonment notation in Canter's DAC report, which the ALJ concluded was an adverse action. Ultimately, the ALJ recommended awarding Canter back pay, compensatory damages for emotional distress, and other relief not currently at issue. Maverick sought review by the ARB.

The ARB concluded the ALJ's findings had all been supported by substantial evidence and affirmed the ALJ's conclusion Canter's claim was timely. The ARB, however, noted *sua sponte* the ALJ had erred in applying the standard under the STAA as it had existed prior to being amended in 2007, in ruling on Canter's claim. Reviewing Canter's STAA claim de novo under the post-2007 standard, the ARB concluded Canter had prevailed on his retaliation claim.[2] Finally, the ARB affirmed the damage awards as supported by substantial evidence.

Maverick now petitions for review. In its petition, Maverick argues the ARB erred in (1) concluding Canter's complaint was timely, (2) concluding Canter had proven his retaliation claim, and (3) affirming the damages as awarded by the ALJ.[3]

---

[2]In 2007, Congress amended the STAA to require a showing that protected activity had been a "contributing factor" in the employer's decision to take adverse action against the employee. 49 U.S.C. § 42121(b)(2)(B)(i). The 2007 amendments impose a lower burden on the employee than existed previously, when the employee was required to show the protected activity had "motivated" the adverse action. See Formella v. U.S. Dep't of Labor, 628 F.3d 381, 389 (7th Cir. 2010) (discussing the effect of the 2007 amendments to the STAA).

[3]Before this court, Maverick argues for the first time the ALJ erred in (1) using the pre-2007 STAA standard; and, more specifically, (2) not requiring Canter to prove the refusal had been a "contributing factor" under the post-2007 standard. We do not consider those issues. See Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005) ("[T]here is a basic principle of administrative law that '[o]rdinarily an appellate court does not give consideration to issues not raised below.'" (quoting Hormel v. Helvering, 312 U.S. 552, 556 (1941))).

## II

We review the ARB's decision under the deferential standard articulated in the Administrative Procedure Act, 5 U.S.C. § 706(2). 49 U.S.C. § 31105(d). Under this standard we must affirm the ARB's conclusions of law unless the same are arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A). We must also accept the agency's factual findings if they are supported by substantial evidence. 5 U.S.C. § 706(2)(E). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the [agency's] conclusion." Steed v. Astrue, 524 F.3d 872, 874 (8th Cir. 2008) (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). As long as the ARB correctly applied the law and the ALJ's "factual findings are supported by substantial evidence on the record considered as a whole" we will affirm the ARB's decision "even though we might have reached a different decision had the matter been before us *de novo*." Wilson Trophy Co. v. N.L.R.B., 989 F.2d 1502, 1507 (8th Cir. 1993) (citations omitted).

## III

Maverick first contends the ARB's conclusion Canter's claim was timely was contrary to law. Maverick argues the STAA limitations period began to run when it placed the abandonment notation in Canter's DAC report in 2004, and Canter did not file his claim until December 16, 2008. Under the STAA, a driver has 180 days to file a STAA claim from the date an alleged violation occurred. 49 U.S.C. § 31105(b)(1). The ARB, however, has interpreted the STAA to incorporate an exception to the general background rule of accrual that a claim accrues at the time of injury. See Osborn v. United States, 918 F.2d 724, 731 (8th Cir. 1990) (describing the general rule). This exception is a version of the discovery accrual rule of federal common law, such that the limitations period begins to run when the employee receives notice of the adverse action taken by the employer. See Eubanks v. A.M.

-6-

Express, Inc., ARB No. 08-138, 4 (ARB Sept. 24, 2009) (holding the employee had 180 days to file a claim from the date the employee received final, definitive, and unequivocal notice of an adverse employment action).  Maverick asserts the ARB's interpretation is invalid.

In reviewing the Department of Labor's interpretation of a statute it administers, we ask two questions.  First, we ask "whether Congress has directly spoken to the precise question at issue."  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  "If . . . Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation."  Id. at 842-43.  Instead, we ask "whether the agency's [interpretation] is based on a permissible construction of the statute."  Id. at 843.

Maverick directs our attention to nothing which indicates Congress intended to exclude a version of the general discovery accrual rule from the STAA.  As we find no indication Congress intended to exclude a version of the general discovery accrual rule from the STAA, we find nothing impermissible in the agency interpreting the STAA to incorporate it's version of the rule.  See Comcast of Ill. X v. Multi-Vision Elec., Inc., 491 F.3d 938, 944 (8th Cir. 2007) ("In federal question cases, the discovery rule applies in the absence of a contrary directive from Congress.") (internal quotation marks and citation omitted).

The dissent argues Chevron deference is inappropriate here.  The dissent first asserts the Supreme Court in TRW Inc. v. Andrews, 534 U.S. 19, 27 (2001), expressly refused to approve the precedent of Comcast.  The dissent, however, misreads TRW. In TRW, the Supreme Court considered a Ninth Circuit precedent which was, admittedly, very similar to the one set forth in Comcast.  Both precedents held that, absent some contrary directive from Congress, we incorporate the general discovery accrual rule into federal statutes.  See TRW, 534 U.S. at 27; see also Comcast, 491

-7-

F.3d at 944. Regarding this common holding, the Court merely noted it had not adopted the position as its own. TRW, 534 U.S. at 27. The Ninth Circuit's precedent, however, exceeded the common holding by requiring Congress to make the contrary directive an express one. See id. It was this requirement of an express indication of intent to exclude the discovery accrual rule which the Court expressly refused to endorse. See id. ("And, beyond doubt, we have never endorsed the Ninth Circuit's view that Congress can convey its refusal to adopt a discovery rule only by explicit command[.]"). The Supreme Court did not in TRW invalidate the presumption of reading the discovery accrual rule into federal statutes. See id. (noting TRW did not require the court to decide the extent of the presumption). Because it did not, Comcast remains good law.

The dissent next takes issue because the ARB's version of the discovery rule differs from the common law discovery accrual rule we would be required to apply were we to interpret the STAA in the absence of the ARB's decision. The ARB's version of the discovery accrual rule holds a violation of the STAA accrues when the victim receives definitive notice of the injury, whereas the general discovery accrual rule would hold accrual to occur upon discovery of the injury or when the victim with due diligence should have discovered the injury. See TRW, 534 U.S. at 30; Comcast, 491 F.3d at 944. The question then, is whether the ARB, having decided to interpret the STAA to include an exception to the general background rule of accrual that an injury accrues at the time it occurs, can adopt an exception different from that widely accepted under the common law. We conclude it can. In doing so, we are mindful that where, as here, Congress is silent on the precise issue in question and the agency has spoken, it is not for the court to impose its own construction of a statute. Chevron, 467 U.S. at 842-43. Rather we are to ask whether the agency's interpretation is a permissible one. Id. at 843. Unlike the dissent, we do not believe the ARB incorporating its version of the discovery rule into the STAA would effectively read out the STAA's statute of limitations. Accordingly, we do not find the ARB's interpretation to be an impermissible one, even though it differs from the

-8-

rule we would be required to read into the statute if we were to interpret it in the first instance.

Thus, under Chevron we defer to the agency's interpretation that the limitations period in the STAA begins to run when the employee receives notice of the employer's adverse action. We also agree with the ARB that the ALJ's finding Canter received such notice within 180 days of filing his claim was supported by substantial evidence. Accordingly, the ARB's determination Canter timely filed his claim was not contrary to law.

IV

Maverick next challenges the ARB's determination Canter prevailed on his retaliation claim. Maverick's challenge is two-pronged. It argues the ALJ's findings are unsupported by substantial evidence.[4] Maverick also argues two of the ARB's legal conclusions supporting the determination are contrary to law.

A retaliation claim based on a refusal to drive under the STAA is considered under a burden-shifting analysis. See 49 U.S.C. § 31105(a)(2)(b) (requiring STAA complaints to be determined under the standard set forth in 49 U.S.C. § 42121(b)(2)(B)). A complainant must first prove a prima facie case of retaliation by showing (1) the refusal to drive was protected under the STAA; (2) the employer knew of the protected conduct; (3) the employer took an adverse employment action against the complainant; and (4) the refusal to drive was a contributing factor in the employer's decision to take the adverse action. 49 U.S.C. §§ 31105(a)(1)(B), 42121(b)(2)(B)(i). Once a complainant sufficiently alleges a prima facie case, the

_____

[4]Maverick also argues the ALJ held Canter only to a burden of production and not a burden of persuasion with regard to the facts. We find this contention to be without merit.

-9-

employer may rebut the employee's evidence by showing by clear and convincing evidence it would have taken the same action in the absence of the refusal. 49 U.S.C. § 31105(a)(1)(B)(ii).

## A.  Necessary Findings of Fact

Maverick's arguments about the findings of fact amount to assertions the ALJ should have found the evidence supporting Maverick's case as more compelling. Maverick mistakes the nature of our review, which is to determine whether the agency's findings were supported by substantial evidence, not whether substantial evidence supports a contrary finding. See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999) ("We may not reverse the [agency's] decision merely because substantial evidence supports a contrary outcome.").

After a review of the record as a whole, we conclude all of the facts found by the ALJ, including those pertaining to the retaliation claim, were supported by substantial evidence.  The pertinent findings include:  (1) the truck had uncorrected defects, (2) Maverick knew about the defects and that the defects violated federal safety regulations, (3) Canter asked Maverick to fix the defects, (4) Canter refused to drive the truck because the defects remained uncorrected, (5) Canter's refusal motivated Maverick to place the abandonment notation in Canter's DAC report, despite being aware the defects remained uncorrected,[5] and (6) it is likely K&B would have hired Canter had Maverick not placed the abandonment notation in his DAC report.

---

[5]Like the ARB, we consider the ALJ's finding under the pre-2007 standard that Canter's refusal motivated Maverick to place the abandonment notation in Canter's DAC report, sufficient to prove under the post-2007 standard that the refusal had been a contributing factor to Maverick's decision to do so.

## B. Necessary Legal Conclusions

Maverick challenges as contrary to law the ARB's legal conclusions that Canter's refusal was protected activity, and the abandonment notation was an adverse employment action.

Protected Activity. The ARB concluded Canter's refusal to drive the truck was protected by the STAA because the truck's uncorrected defects violated federal safety regulations. In pertinent part, the STAA prohibits an employer from taking an adverse employment action against an employee who refuses to operate a vehicle because operation "violates a regulation . . . of the United States related to commercial motor vehicle safety[.]" 49 U.S.C. § 31105(a)(1)(B)(i). At the time Canter refused to drive the truck, the fluid leak in the power steering box and the chaffing brake hose remained uncorrected. Driving the truck with either defect would violate federal safety regulations. See 49 C.F.R. § 393.1(c) (prohibiting the operation of vehicles not equipped in accordance with the requirements of part 393); id. § 393.45(b)(2) (requiring brake hoses to be secured against chaffing); id. § 393.209(e) (requiring all components of a power steering system be in operating condition and a power steering system not to leak).

Relying on 49 C.F.R. § 396.9(c), Maverick argues the defects were not violating safety regulations because they were not severe enough to place the truck out of service. We find this argument unpersuasive. Nothing in the text of section 396.9(c), which sets forth the standard for placing a vehicle out of service, limits violations to only those severe enough to place a vehicle out of service. Accordingly, we find nothing contrary to law about the ARB concluding Canter's refusal was protected activity.

The ARB also concluded in the alternative that Canter's refusal to drive was protected under the STAA because Canter had a reasonable fear of danger to himself

-11-

or the public due to the truck's unsafe condition. <u>See</u> 49 U.S.C. §§ 31105 (a)(1)(B)(ii). However, because we must accept the ARB's conclusion that Canter's refusal to drive was protected because the uncorrected defects violated safety regulations, we need not review the ARB's alternate basis for finding the refusal protected by the STAA.

<u>Adverse Employment Action</u>. Maverick next challenges as contrary to law the ARB's conclusion that the placement of the abandonment notation in Canter's DAC report was adverse to Canter. Maverick argues it was not adverse because Canter was initially able to obtain employment. Had Canter been aware of the abandonment notation when Maverick first placed it in his DAC report, such that the limitations period would have elapsed while Canter was still able to obtain work, that might be the case. We have, after all, held the mere existence of a negative employment report not to be adverse in the absence of proof the report negatively affected future employment opportunities. <u>See</u> <u>Turner v. Gonzales</u>, 421 F.3d 688, 696 (8th Cir. 2005) (holding negative employee review not adverse until it is used to deny a job opportunity).

Under the unusual circumstances of this case, however, we cannot conclude the ARB's decision was contrary to law. The ARB had before it a finding supported by substantial evidence that Maverick's placement of the abandonment notation actually led to Canter being denied employment. Because the ARB had that finding before it, its conclusion that the placement of the abandonment notation was adverse was not contrary to law.

Accordingly, Maverick's challenge to the ARB's conclusion that Canter prevailed on his retaliation claim fails.

V

Maverick also challenges the back pay and compensatory damage awards as contrary to law. It is undisputed that an employer who violates the STAA may be ordered to pay awards for back pay and compensatory damages. 49 U.S.C. § 31105(3)(A)(iii).

Maverick argues the calculation of the back pay award was contrary to law because the ALJ did not reduce or eliminate the award to account for Canter's failure to mitigate damages by voluntarily leaving his position with DSCO. Typically, a complainant's voluntary decision to leave an interim position constitutes a failure to mitigate damages that will toll the back pay period. E.E.O.C. v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992) (citing Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1277 (4th Cir. 1985)). However, when the choice to voluntarily leave the interim position is "motivated by unreasonable working conditions," the decision does not toll the back pay period. Id.; see also NLRB. v. Ryder Sys., Inc., 983 F.2d 705, 714 (6th Cir. 1993) ("A claimant who leaves his job for a justifiable reason does not forfeit his right to additional back pay."). Canter left DSCO because DSCO wanted him to violate hour-of-service regulations, an unreasonable working condition. Accordingly, the ALJ's decision not to reduce the back pay award on that basis was not contrary to law.

At the last, Maverick contends the $75,000 the ALJ awarded Canter as compensatory damages for his emotional distress is contrary to law because it is excessive. Generally, "[a]wards for pain and suffering are highly subjective and the assessment of damages is within the sound discretion of the" factfinder. Christensen v. Titan Distribution, Inc., 481 F.3d 1085, 1097 (8th Cir. 2007) (quoting Webner v. Titan Distribution, Inc., 267 F.3d 828, 836 (8th Cir. 2001)). "We have intervened only in those rare situations where we are pressed to conclude that there is plain

injustice or a monstrous or shocking result." <u>Hall v. Gus Const. Co., Inc.</u>, 842 F.2d 1010, 1017 (8th Cir. 1988) (internal quotation marks and citations omitted).

Maverick argues the only evidence Canter offered of his depression was his own testimony, and most STAA cases without medical evidence result in modest awards. "A plaintiff's own testimony can be sufficient for a finding of emotional distress, and medical evidence is not necessary." <u>Christensen</u>, 481 F.3d at 1097 (citing <u>Webner</u>, 267 F.3d at 836). We also note the ARB makes its compensatory damage awards guided by the awards made in cases involving similar injuries. <u>See</u> <u>Leveille v. NY Air Nat'l Guard</u>, ARB Case No. 98-079, 3 (ARB Oct. 25, 1999) (discussing criteria for making compensatory damage awards). Our review of the ARB's case law indicates its awards for compensatory damages have varied significantly. Although $75,000 is near the high end of the range, the ARB has made similar awards in other cases. <u>See, e.g.</u>, <u>Michaud v. BSP Transp., Inc.</u>, ARB Case No. 97-113, 9 (ARB Oct. 9, 1997) (affirming award of $75,000 on evidence of major depression and loss of home and savings). Accordingly, we find no abuse of discretion in the ALJ's award of $75,000 as compensatory damages for Canter's emotional distress.

VI

For the foregoing reasons, we deny the petition for review.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. In my view, there are two distinct reasons why the decision of the Administrative Review Board should not be affirmed.

**A.** First, the Board committed errors of law in ruling that Canter's retaliation claim is not time-barred by the STAA's express 180-day statute of limitations:

-14-

> An employee alleging discharge, discipline, or discrimination in violation of subsection (a) of this section . . . may file a complaint with the Secretary of Labor not later than 180 days afer the alleged violation occurred.

49 U.S.C. § 31105(b). An agency may not ignore an express statute of limitations. It reflects a legislative "value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale claims." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64 (1975), quoted in Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 169 (8th Cir. 1995) (en banc).

Canter's complaint was filed more than *five years* after Maverick's alleged post-employment retaliatory action.[6] Instead of dismissing the claim as time-barred, the Board supposedly applied the "discovery rule of federal common law," op. at 6, which the court approves as consistent with Eighth Circuit precedent absent "a contrary directive from Congress," id. at 7. But the Supreme Court expressly refused to approve that precedent in TRW, Inc. v. Andrews; instead, the Court concluded that the "structure and text" of the federal statute at issue in that case "evince Congress's intent to preclude judicial implication of a discovery rule." 534 U.S. 19, 27-28 (2001). In the federal labor laws, Congress has consistently adopted short statutes of limitations in the interests of promptly resolving employment disputes and promoting

---

[6]Canter's claim was truly stale. He was hired seven times by four different trucking companies after quitting Maverick in December 2003. He first experienced "difficulty" in April 2008, when the country's "Great Recession" had greatly reduced the demand for truck drivers. Even then, he was hired by DSCO in July 2008 and quit in early September 2008. When he obtained the DAC report later in September, he objected to five different negative employer notations. Canter's damage claim is based on K&B's *subsequent* failure to hire a prospective employee with a terrible work record at a time when the economy was depressed and many experienced truck drivers were also seeking work. This claim should be time-barred.

labor peace. For example, § 10(b) of the National Labor Relations Act, 29 U.S.C. § 10(b), provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." In reversing a decision of the National Labor Relations Board that failed to enforce this limitation, the Court ended with a pointed reminder that governs decisions of the Secretary of Labor's Administrative Review Board as well:

> As expositor of the national interest, Congress, in the judgment that a six-month limitations period did "not seem unreasonable," barred the [NLRB] from dealing with past conduct after that period had run, even at the expense of the vindication of statutory rights.

Local Lodge No. 1424, Int'l Ass'n of Machinist v. NLRB, 362 U.S. 411, 429 (1960). The Board ignored that governing principle in adopting the discovery rule here. Under Chevron, its contrary decision should not be affirmed.

Moreover, the court brushes aside a second legal error by euphemistically stating that the Board adopted a "version" of the discovery rule of federal common law, namely, that Canter had 180 days after receiving "final, definitive, and unequivocal notice of an adverse employment action." That is not a "version" of the common law rule. The Board's rule is flatly contrary to the common law rule, which, as the Supreme Court has expressly noted, includes an "inquiry notice" principle that "trigger[s] the limitations period" when "a reasonable person in her position would have learned of the injury in the exercise of due diligence." TRW, 534 U.S. at 30; see Comcast of Ill. X v. Multi-Vision Elec. Inc., 491 F.3d 938, 944 (8th Cir. 2007) ("Under this rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, *or with due diligence should have discovered*, the injury which is the basis of the litigation.") (emphasis added). The Board's adoption of a rule contrary to the universally accepted discovery rule was nothing less than unlawfully legislating an express statute of limitations out of the statute. And this

error was far from harmless.  Maverick presented evidence that Canter was not hired by one trucking company in 2007 under circumstances that would have caused a diligent, experienced truck driver to obtain his DAC, as Canter finally did in 2008. By adopting a legally unjustifiable "version" of the discovery rule, the ALJ and the Board were able to improperly avoid resolving this issue.

**B.**  Second, the Board, the court, and the parties agree that the ALJ erred in failing to apply a 2007 amendment to the STAA: "All complaints initiated under this section shall be governed by the legal burdens of proof set forth in [49 U.S.C.] section 42121(b)." 49 U.S.C.A. § 31105(b)(1) (2013 Pocket Part).  The Board concluded the error was harmless, a conclusion Maverick squarely challenged on appeal.  The court ignores the issue.  I conclude the Board committed legal error.

As Maverick argued, the ALJ sustained Canter's claim because (i) his alleged refusal to drive the truck for safety reasons was STAA protected activity; (ii) Maverick knew of the protected activity, creating an inference of discrimination; and (iii) Canter established that Maverick's purported reason for the adverse DAC notation was pretextual.  But in the 2007 amendment, Congress expressly provided that "the Secretary of Labor shall dismiss a complaint . . . unless the complainant makes a prima facie showing that [the protected activity] was a contributing factor in the unfavorable personnel action alleged in the complaint."  49 U.S.C. § 42121(b)(2)(B).  Here, the ALJ did not require Canter to prove the "contributing factor" element of his claim, nor did the ALJ make that finding.  The court brushes this aside by inventing a finding the ALJ never made -- that "Canter's refusal motivated Maverick to place the abandonment notation in Canter's DAC report," op. at 9.  All the ALJ in fact found was that Maverick's proffered explanation – which the ALJ misstated -- was pretextual.  By this faulty analysis, the ALJ and the Board were able to avoid the critical issue presented by the evidence in this case.

-17-

Following the tragic accident on November 21, 2003, the Pennsylvania State Police inspected Canter's truck and concluded it had defects that violated federal safety regulations but had not contributed to the accident -- two brake adjustment defects that rendered the truck "out of service" (not operable) and a slight power steering fluid leak and brake hose chafing that required repair to be brought into compliance but were not "out of service" defects. Following adjustment of the brakes near the scene of the accident, and with the approval of the State Police and Maverick, Canter drove the truck 70-80 miles to a truck stop near his home where the loaded trailer was left to be picked up by another driver, then nine more miles to Canter's home, where it sat for five weeks while Canter took a medical leave of absence on account of depression from the fatal accident.

On December 30, having been released to return to work, Canter told his Fleet Manager that he was quitting because Maverick did not grant him workers' compensation benefits for his non-physical emotional injuries. The next day, instead of returning the truck to Maverick's yard in Ohio, as the Fleet Manager had requested, Canter called and said he would only take it to the truck stop nine miles from his home because it had "too many deadline problems." Without question, Maverick made the DAC notation because Canter quit and refused to drive his truck back to Maverick's facilities in Ohio. But was the notation made because Canter had refused to drive the truck because it was unsafe, or because he had refused his former employer's reasonable request that he drive a truck that had safety defects requiring repair but was not out of service, a truck he had already driven some 100 miles in the same condition, to a yard 250 miles away where it could be efficiently and properly repaired? If the latter, then the DAC notation was a truthful explanation of why Maverick would not consider rehiring Canter, not a pretext for retaliating against this former employee because he had engaged in protected activity. An agency decision that uses an erroneous legal standard to avoid addressing the key fact question in the case is, without question in my view, "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law" within the meaning of 5 U.S.C. § 706(2)(A).

-18-

For either or both these reasons, I would reverse.

_____